Vonna J. GLASS, Appellant/Cross–
Appellee,

v.

Daniel J. PRCIN, Appellee/Cross–
Appellant.

No. 07–98–0244–CV.

Court of Appeals of Texas,
Amarillo.

Sept. 8, 1999.

J. Edwin Price, Attorney at Law, Lubbock, for appellant.

Gary M. Bellair, Donald M. Hunt, Carr, Hunt, Wolfe & Joy, LLP, Lubbock, for appellee.

Before BOYD, C.J., and QUINN and REAVIS, JJ.

BRIAN QUINN, Justice.

Vonna J. Glass (Glass) appeals and Daniel Julius Prcin (Prcin) cross-appeals from a judgment vesting title and possession of a house in Prcin and ordering the latter to pay Glass $38,133. The two issues asserted by Glass involve the trial court's jurisdiction to entertain the proceeding and the effect her discharge in bankruptcy had upon the action. She believes that the court lacked such jurisdiction because the suit was tantamount to a bankruptcy claim which only the bankruptcy court could adjudicate. And, alternatively, to the extent that all debts of Glass were discharged via edict of the bankruptcy court, the discharge barred Prcin from recovering anything from her. By way of cross-appeal, Prcin argues that the portion of the judgment awarding Glass reimbursement is invalid. We reverse.

### Background

Prcin met Glass through mutual friends while the former was involved in a divorce. Regardless of whose characterization of the relationship is believed, the soon-to-be divorcee and Glass became close. Moreover, before the divorce was finalized, Prcin purchased a house. This house stands at the center of the present controversy. That is, Prcin paid for all but about $17,300 of the $82,500 purchase price, however, title to the house was placed in the name of Glass. The latter contended that title was so made because Prcin intended to give the house to her. Prcin alleged that he did so because Glass insisted that placing it in his name could result in his wife obtaining an interest in it. So too did

1. However, the house in question purportedly remained her homestead. Furthermore, it was designated in her bankruptcy schedules as her residence.

2. This had the effect of reinvesting Glass with legal title to all of the property comprising the

he aver that Glass agreed to reconvey the realty to him at some time in the future.

Eventually, Prcin and Glass began to live together in the house, however, after several months, their relationship ended. Prcin left and Glass assumed and completed payment of the $17,300 principal due on the house.

Prcin subsequently sued Glass to recover the house. Before the matter could be tried, Glass ventured to Utah and there initiated a chapter 7 bankruptcy proceeding.[1] On her schedules, she designated Prcin as an unsecured creditor. In response, Prcin filed a proof of claim. Shortly thereafter, all the property of Glass's bankruptcy estate was abandoned by the trustee.[2] Then, because no one, including Prcin, filed a complaint objecting to her discharge, the bankruptcy court entered an order releasing or discharging Glass from her debts.

Despite the discharge, Prcin continued to press his suit against Glass. The latter's efforts to terminate the proceeding via pleas to the jurisdiction and a motion for summary judgment were unsuccessful. So, the cause eventually came for trial by the court. Upon hearing the evidence offered, the trial court awarded Prcin the house and awarded Glass the sum of $38,133 as reimbursement.[3]

### Issue One—Plea to Jurisdiction

■ Glass initially contended that the trial court lacked jurisdiction over the suit. This was allegedly so because it was nothing more than a claim over which the Utah bankruptcy court acquired exclusive jurisdiction by virtue of its ability to allow claims and discharge debt. We disagree.

The allowance or disallowance of a claim against a bankrupt's estate is considered a

bankruptcy estate, which included the house in question.

3. Glass requested findings of fact and conclusions of law, however, the appellate record fails to contain any. Furthermore, neither party complains about their absence.

"core proceeding" by title 28 of the United States Code, 28 U.S.C. § 157(b)(2)(B), as are questions regarding the dischargeability of a debt and objections to the discharge of a debt. *Id.* at § 157(b)(2)(I) and (J). Furthermore, resolution of such issues falls within the exclusive jurisdiction of the federal bankruptcy court or United States district court sitting in bankruptcy. *In re Summerfield Pine Manor,* 219 B.R. 637, 638–39 ( 1st Cir.BAP1998) (holding that core proceedings cannot be left to state court for adjudication); *In re Smith,* 189 B.R. 240, 243–44 (Bankr.D.N.H.1995) (holding that questions involving exceptions to discharge are within the exclusive province of bankruptcy court, as opposed to state court). Yet, the proceeding before us was not one to determine whether the bankruptcy court should discharge Glass, as contemplated by 11 U.S.C. §§ 523 and 727 and 28 U.S.C. § 157(b)(2)(I) and (J). Nor was it one to determine whether Prcin had a claim against his ex-girlfriend's bankruptcy estate, as contemplated by 11 U.S.C. § 502 and 28 U.S.C. § 157(b)(2)(B).

Rather, the lawsuit underlying this appeal was one initiated in state court to recover property or damages.[4] It was not founded upon any provision of title 11 of the United States Code or any other federal law. Indeed, the causes of action asserted arose solely from the common and equitable law of Texas. Moreover, these circumstances, when coupled with the absence of any apparent independent basis for federal jurisdiction, indicate that the suit was not even of the type which a bankruptcy court could adjudicate. *See* 28 U.S.C. § 1334(c)(2).[5] Consequently, we are unable to say that those provisions of the bankruptcy code involving the allowance and discharge of claims somehow vested the Utah bankruptcy court with exclusive jurisdiction over the suit.

4. Prcin sought both via his first amended petition, as illustrated by the concluding paragraphs of said document.

5. According to 28 U.S.C. § 1334(c)(2), a bankruptcy court "shall abstain from hear-

### Issue Two—Claim Barred Because Discharged in Bankruptcy

Next, Glass contends that Prcin was barred from recovering due to her discharge in bankruptcy. With this proposition we agree.

### Standard of Review

■ Glass worded the current issue in the vernacular of *res judicata.* That is, she argued that the dispute underlying Prcin's suit, for all practical purposes, was adjudicated when the Utah bankruptcy court granted her a discharge. Thus, the discharge purportedly barred further prosecution of the matter. *See In re Haga,* 131 B.R. 320, 327 (Bankr.W.D.Tex.1991) (stating that a discharge is an affirmative defense which establishes a prima facie defense to any claim based upon a prepetition debt). Moreover, because the defense of *res judicata* is dependent upon fact and the trial court entered judgment in favor of Prcin, we cannot reverse the judgment unless the record illustrates that no evidence supports the trial court's determination *vis-a-vis* the defense, and that the defense was established as a matter of law. *Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 940 (Tex.1991).

■ Next, *res judicata* serves to bar relitigation of a dispute if the dispute was or could have been litigated in a prior action. *Van Dyke v. Boswell, O'Toole, Davis & Pickering,* 697 S.W.2d 381, 384 (Tex.1985). Furthermore, the prior action must have resulted in a final judgment by a court of competent jurisdiction and involved the same parties or their privies before any bar arises. *Coalition of Cities for Affordable Utility Rates v. Public Utility Commission of Texas,* 798 S.W.2d 560, 562–63 (Tex.1990).

ing" proceedings "based upon a State law claim or State law cause of action" which proceeding "could not have been commenced in a court of the United States absent jurisdiction under this section."

### Application of Standard

Several pertinent facts are established by the record and are undisputed. They are that 1) Glass initiated a bankruptcy proceeding and designated Prcin as one of her creditors, 2) Prcin knew of the proceeding, filed a proof of claim therein, and failed to object to Glass's discharge, and 3) a bankruptcy court of competent jurisdiction entered an order discharging her from liability for her debt. These undisputed facts satisfy those elements of *res judicata* pertaining to the need for a prior final order and an identity of parties. This is so because Prcin's choses in action became part of the bankruptcy once Glass scheduled him as a creditor and he filed a proof of claim. Moreover, the order discharging Glass from all debt owed to creditors was final and appealable upon issuance. Also, because there existed no contradictory evidence, any purported finding of the court to the contrary would be bereft of evidentiary support. So, the only pertinent question remaining entails whether Prcin's demands were extinguished through the discharge. To determine that requires perusal of title 11 of the United States Code.

Section 524(a)(2) of said Code states that a discharge operates as a bar against the commencement or continuation of an action to collect, recover, or offset any "debt as a personal liability of the debtor." In other words, it insulates the debtor from personal liability for any "debt" discharged. So, whether this bar affected Prcin's demands depends upon whether they constituted debt as contemplated by the Code.

Although the meaning of the word "debt" is rather broad, *Cohen v. De La Cruz*, 523 U.S. 213, ——, 118 S.Ct. 1212, 1216, 140 L.Ed.2d 341, 346 (1998), the United States Congress defined it as a "liability on a claim." 11 U.S.C. § 101(12). In turn, it defined "claim" as

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5)(A) and (B). And, by "right to payment," it intended that the payment of monies be involved. That is, to be a claim or debt, the right pursued by the complainant had to encompass, in one way or another, the payment of monies by the debtor. *In re Continental Airlines*, 125 F.3rd 120, 133 (3rd Cir.1997); *see Ohio v. Kovacs*, 469 U.S. 274, 280–83, 105 S.Ct. 705, 708–11, 83 L.Ed.2d 649, 656–58 (1985) (holding the equitable claim dischargeable since it was convertible into an obligation to pay money); *In re Davis*, 3 F.3d 113, 116 (5th Cir.1993) (stating that the predecessor of § 101(5)(B), which was worded identically to § 101(5)(B), was designed to cause the liquidation of contingent claims for "money damages"); *In re Irizarry*, 171 B.R. 874, 878–79 (9th Cir.BAP1994) (holding that since the attempt to cancel the deeds and liens involved could not result in the payment of monetary damages, it was not a claim or debt subject to discharge).

Additionally, the right to payment or debt contemplated could be rather direct and simple, much like the obligation inherent in paying an unsecured promissory note. Or, it may be somewhat indirect, such as when one breaches a duty to perform and the breach may be recompensed through either equity or monetary payment. 11 U.S.C. § 101(5)(B); *In re Ward*, 194 B.R. 703, 710 (Bankr.D.Mass.1996); *In re Kings Terrace Nursing Home*, 184 B.R. 200, 203 (Bankr.S.D.N.Y.1995); *In re Aslan*, 65 B.R. 826, 830–31 (Bankr.C.D.Cal. 1986).[6] And, if the breach can be amelio-

---

**6.** In holding as it did, the *Ward* court rejected the proposition adopted in *In re Udell*, 18

rated in either way, it matters not whether the complainant merely demands equitable relief for the right pursued, it is nonetheless a debt subject to discharge. *In re Ward*, 194 B.R. at 710. So, whether Prcin's suit amounted to a debt which was discharged now depends upon the nature of his demands and the remedies applicable thereto. To determine this we peruse the allegations uttered by Prcin in his first amended complaint. Simply put, Prcin alleged that Glass defrauded him. This fraud was purportedly evinced in several ways. One involved her false promise to reconvey the property to him once his wife could no longer reach it through the divorce. Another entailed her taking advantage of the confidential or fiduciary relationship which had grown between the two. *See Estate of Herring*, 970 S.W.2d 583, 586 (Tex.App.—Corpus Christi 1998, no writ) (holding that a breach of fiduciary relationship constitutes a constructive fraud). Another involved duping him into believing she cared for him and, thus, would help him by temporarily taking the property in her name.

Given that he complained of fraud, the remedies afforded Prcin were several. Some, for instance, were equitable in nature and consisted of 1) rescinding the documents illustrating Glass's title to the house and, 2) placing the house in a constructive trust.[7] Another entailed receiving a monetary award equal to value of his loss. *See e.g., Texas Commerce Bank v. Lebco Constr., Inc.*, 865 S.W.2d 68, 73 (Tex.App.—Corpus Christi 1993, writ de-

nied) (stating that when fraud is associated with the purchase or transfer of property, the victim is entitled to recover the difference between the monetary value of that parted with and that received). So, as can be seen, a number of different remedies arose from and were available to ameliorate the fraud of Glass. And, at least one of them encompassed an obligation to pay money. Moreover, Prcin prayed for *all three*.[8] Given these incontestable circumstances, the action he pursued and the rights he endeavored to redress satisfied the elements of a claim as defined in § 101(5)(B) *supra*. Because they did, we conclude, as a matter of law, that they also constituted debts within the category of debts discharged by the Utah bankruptcy court. *See In re Aslan*, 65 B.R. at 831 (holding the equitable remedy of specific performance discharged because the breach of performance also gave rise to a claim for damages).

As to Prcin's contention that because he was pursuing an *in rem* action the discharge posed no bar, we disagree for several reasons. First, in making that argument he ignored the fact that he expressly plead for damages against Glass. In so pleading, his allegations evinced more than a mere *in rem* proceeding; they also illustrated effort to assess liability against her personally.

Second, the United States Supreme Court recognized in *Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) that a discharge under chapter 7 would extinguish an *in*

---

F.3d 403 (7th Cir.1994), that the right to payment of money must arise from the equitable remedy as opposed to the breach. So too do we reject *Udell*. The decision simply ignores the plain wording of 11 U.S.C. § 101(5)(B). Again, the latter clearly states that a "right to an equitable remedy for breach of performance" is a claim when *"such breach* gives rise to a right to payment...." *Id*. (emphasis added). In referring to the right of payment as arising from "such breach," it strains credulity to conclude, as did the *Udell* court, that the right must arise from the equitable remedy itself. So, we reject *Udell* and opt to follow the rule

of statutory construction obligating us to assign words their plain meaning. Tex. Gov't Code Ann § 311.011(Vernon 1988) ("Code Construction Act")

7. In his appellate brief, Prcin also suggests that the realty could have been placed in a resulting trust. However, that particular relief went unmentioned in his live pleading.

8. It is quite conceivable that Prcin could have waived any demand for the house and opted to merely pursue damages for fraud.

*rem* claim if it were not for the rule of *Long v. Bullard*, 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886) as codified in 11 U.S.C. § 522(c)(2). *Long*, as codified in § 522(c)(2), provides that a creditor's right to foreclose upon a mortgage or lien survives bankruptcy. *Long v. Bullard*, 117 U.S. at 620, 6 S.Ct. at 918, 29 L.Ed. at 1006 (1886). In other words, *in rem* actions based upon a lien or mortgage survive discharge; others do not. At bar, Prcin had no lien or mortgage encumbering the house; nor did he contend that he did. Thus, application of *Johnson* results in the conclusion that any *in rem* claim he had was extinguished when the bankruptcy court discharged Glass.

In sum, no evidence supports the trial court's decision to reject Glass's defense of *res judicata.* This is so simply because there is no evidence supporting it. Furthermore, each element of the defense was established as a matter of law. So, because the rights sought to be redressed by Prcin fell within the penumbra of a debt, and those debts were previously discharged, the trial court erred in enforcing those rights and entering judgment in favor of Prcin.

### Cross–Appeal

By cross-appeal, Prcin attacks the judgment to the extent that it orders him to reimburse Glass. The grounds asserted are several but only one need be addressed for it is dispositive. And, through that issue, he questioned whether "reversal ... of the award of title and possession to the property [would] implicitly negate[ ]" the reimbursement ordered by the court. We answer yes.

Though not expressed in the judgment or any finding of fact or conclusion of law, the court ordered Prcin to reimburse Glass for the mortgage payments she made, taxes she paid, and improvements she under-

took because she was ultimately denied the house. Indeed, there was no other cognizable basis upon which it could have directed Prcin to do so other than because he was awarded the property. No one plead any; nor did anyone purport to establish any at trial. So, because we have concluded that the trial court erred in awarding Prcin the house, we must also hold that it erred in directing him to reimburse Glass.

Accordingly, the judgment entered below is reversed and, pursuant to Texas Rule of Appellate Procedure 43.3, we render judgment declaring that Prcin take nothing from Glass, that Glass take nothing from Prcin, and that all parties pay their own costs incurred.[9]

---

9. Our decision renders moot the issue of whether Glass had standing to pursue the reimbursement claim against Prcin. In short, there being no claim for reimbursement, we need not determine who owns it. Thus, we deny his pending motion to sever, reverse, and remand that portion of the judgment as moot.