In re Andres **GACHARNA** and Catherine E. **Lindsay,**
Debtors.

No. 12–08807.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Oct. 19, 2012.

Bradley H. Foreman, Chicago, IL, for Debtors.

William J. Choslovsky, Chicago, IL, for Creditors.

### ORDER ON OBJECTION
### TO CONFIRMATION
### (Dkt. No. 34)

JACQUELINE P. COX, Bankruptcy Judge.

## I. Facts and Background

The Debtors Andres Gacharna ("Gacharna") and Catherine E. Lindsay ("Debt-ors") filed a petition for relief under Chapter 13 of the Bankruptcy Code on March 6, 2012. Creditors United Promotions, Inc. ("UPI") and Fernando Figueredo (collectively "the Creditors") objected to the Debtors' May 15, 2012 Modified Plan.

The Debtors and a related entity, the Lindsay Corporation, were sued by UPI for various claims, including trade secret misappropriation. Co-debtor Catherine Lindsay was not a party in that matter; however, she is a signatory to and is bound by the Settlement Agreement ("Agreement") that resolved it. UPI is a specialty chemical company which focuses on the development of biocides and antimicrobial agents. Gacharna was employed by UPI for five months in 1999.

After Gacharna left its employment, UPI suspected that he had taken with him and subsequently used its confidential information. The parties resolved the matter by entering a Settlement Agreement which required the Debtors to (1) pay UPI $350,000; (2) not use UPI's trade secrets; (3) not use UPI's exclusive distributors and suppliers to sell biocides and (4) cease conducting any business that is potentially competitive with the business of UPI. The Debtors were also required to provide UPI with Lindsay Corp.'s registration documents and other unredacted documents showing its distributors, suppliers and customers so that UPI could pursue litigation against those parties.

The Settlement Agreement included language whereby the parties agreed that the nonmonetary provisions of Articles 3 and 4 were the essence of the agreement. The agreement also included a provision wherein the parties agreed that should the Debtors fail to perform the duties prescribed in Articles 3 and 4, the Creditors would be irreparably harmed and that in-

junctive relief would be appropriate to require the Debtors to perform the duties described in Articles 3 and 4. The agreement required the Debtors to submit a signed consent injunction that could be filed with the court upon breach. It also provided that the Creditors' releases would be rendered null and void if the Debtors failed to perform the duties required of them. The agreement allowed a prevailing party to recover attorneys' fees in an action for breach. The Creditors also assert that the Settlement Agreement does not substitute an attorneys' fee award for injunctive relief.

Breaches followed. Attorneys fees were awarded to the Creditors.

## II. Are the Debtors' Non–Monetary Obligations Dischargeable?

The Creditors argue that the Debtors' non-monetary obligations are not dischargeable. This Court agrees.

Creditor UPI is scheduled twice on the Debtors' Amended Schedule F of Unsecured Creditors Holding Nonpriority Claims. Line 6 therein lists a $12,500 debt for a remaining payment on the Settlement Agreement. Line 8 therein lists a $97,266 debt for a court judgment in federal district court or arbitration award arising out of an alleged breach of the Settlement Agreement.

The Debtors argue that the covenant not to compete is unenforceable as a naked restraint on competition because it is unlimited in scope, in terms of time and geography. Inconsistently, however, the Debtors also argue that Gacharna's obligations under the agreement expired in March of 2012. The Debtors ask this Court to find that the covenant not to compete is unenforceable under Florida law.

Article 3 of the agreement states: [a]rticle 3: Second Parties To Leave The Biocide Business. The Debtors agreed that they, their companies and privies, and all other entities acting in concert with them or any of them, immediately upon execution of the Terms Sheet and forever cease to conduct any business that is potentially competitive with the business of UPI. Articles 3.1 through 3.5 prohibit the Debtors from registering products by cancelling, withdrawing and revoking any product registrations; required the Debtors to cancel trademarks and patents generally; to remove from all channels of commerce any advertisements and promotional information and an acknowledgment by the Debtors that UPI's supply and distribution network is a valuable asset. Those obligations are noted to be continuing, without a termination date noted in the Settlement Agreement.

## III. Discussion

■ The Court declines to rule that the covenants are broad and unenforceable. The Debtors have not shown that conditions in the industry have changed warranting vacation of the terms that they have agreed to. Generally, an application to modify or dissolve a permanent injunction may be initiated by petition to the court which granted the injunction with supporting affidavits that show the changes in conditions upon which the moving party relies. The movant has to show that existing conditions differ so substantially from those which precipitated the injunction as to warrant judicial adjustment. *Hodge v. Department of Housing and Urban Development*, 862 F.2d 859 (11th Cir.1989).

■ However, the Court finds that the Debtors' obligations under the Settlement

Agreement are non-monetary and for that reason are not dischargeable herein.

Under Bankruptcy Code section 101(5) the term claim means:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

11 U.S.C. § 101(5).

The Settlement Agreement does not provide for monetary compensation for breach of its terms, except for attorneys fees. It provides that the parties may seek arbitration of disputes of any kind through binding arbitration with Mark A. Buckstein in his sole and absolute discretion. The attorneys fee provision is separate from the terms that prohibit the Debtors from engaging in conduct that encroaches on the Creditors' trade secrets.[1]

In *In re Udell,* 18 F.3d 403, 406–09 (7th Cir.1994) an employer and its former employee entered into an agreement that included a covenant not to compete. For three years after leaving, the employee could not engage in any business similar to the employer's within 50 miles. The Seventh Circuit held that for bankruptcy purposes a debt is a liability on a claim but that where a creditor has no option to accept payment in lieu of performance, the debtor's obligation is not a claim and that a

right to an equitable remedy for breach of performance is a "claim" if the same breach also gives rise to a payment "with respect to" the equitable remedy. The Creditors herein do not have a right to substitute payment for the equitable remedy; they have a right to certain conduct from the Debtors. For that reason the Creditors' right is not a claim for bankruptcy purposes.

The Seventh Circuit ruled that its decision in *Udell* was consistent with decisions, including its own, that deal with the dischargeability in bankruptcy of environmental injunctions. *In Matter of CMC Heartland Partners,* 966 F.2d 1143 (7th Cir.1992) the Seventh Circuit "held that a CERCLA (Comprehensive Environmental Response, Compensation, and Liability Act) injunction directing a property owner to clean up his land created an obligation that 'runs with the land' and survives bankruptcy." *Udell,* 18 F.3d at 407. In *In re Chateaugay Corp.,* 944 F.2d 997, 1008 (2nd Cir.1991), the Second Circuit discussed injunctions ordering an offender to remove wastes and one ordering him to end further pollution from such wastes. The court held that the former is a claim if the creditor obtaining the injunction had the option to do the clean up work itself and sue for response costs, thereby converting the injunction into a monetary obligation. The court held that the latter was not a claim dischargeable in bankruptcy because the creditor did not have the option to accept payment in lieu of continued pollution. *See also In re Torwico Electronics, Inc.,* 8 F.3d 146, 150 (3d Cir.1993) (noting that the state's cleanup order is not a claim dischargeable in bankruptcy).

The Creditors' right to an injunction herein does not give rise to payment. Article 6.2 of the Settlement Agreement states that the parties agree to execute a final Consent Judgment that enjoined the

---

1. Arbitration of disputes followed.

Debtors to perform the duties prescribed in Articles 3 and 4 of the Agreement. The Consent Judgment was not to be filed immediately with the court. A Mediator was to hold it and file it with the court only if, within 10 days after the Creditors gave notice of breach of the agreement to the Debtors, the Debtors fail to cure the breach (if the breach is curable) or file a demand for arbitration. Article 6.7 states that if either party brings an action for breach of any of the provisions of the agreement, the prevailing party shall be entitled to recover the reasonable fees and expenses of its counsel. The two remedies are separate. The agreement does not provide for payment as the equitable remedy. The fee provision is not a compensation remedy; it is designed to make a prevailing party whole after the resolution of disputes.

The Debtor's obligation to perform under the Settlement Agreement is not dischargeable.

The Creditors' objection is Sustained. Confirmation of the Debtors' May 15, 2012 Plan (dkt. no. 25) is DENIED.