In re Michael E. and Angela
L. WARD, Debtors.

The MAIDS INTERNATIONAL,
INC., Plaintiff,

v.

Michael E. and Angela L.
WARD, Defendants.

Bankruptcy No. 95–45186.
Adversary No. 96–4037.

United States Bankruptcy Court,
D. Massachusetts.

April 16, 1996.

704

Peter Knox, Shirley, MA, for Maids International Inc.

Andrew G. Lizotte, Hanify & King, Boston, MA, for Michael E. Ward, Angela L. Ward.

## *OPINION*

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

Seeking to enforce a noncompetition clause in its franchise agreement, The Maids International, Inc. ("Maids") has brought this complaint to enjoin Michael E. Ward and Angela L. Ward (the "Debtors") from owning or operating a maintenance and cleaning service within a fifty mile radius of the franchised territory. Maids contends neither the Debtors' bankruptcy filing nor rejection of their covenant not to compete affects its right to an injunction against the Debtors' competition. I am thus faced with the question of whether Maids' right to injunctive relief is a "claim" within the meaning of the Bankruptcy Code and hence subject to being discharged. At the hearing on Maids' motion for a temporary restraining order, I ruled its right to an injunction is a claim. I therefore dismissed the complaint and ordered Maids to file a proof of claim, reserving jurisdiction to issue the present opinion. Set forth here are my findings of fact and conclusions of law in support of the order of dismissal.

## I. FACTS

The facts are not in dispute. Maids has developed a system for establishing and operating a household maintenance and cleaning service. Having a principal office in Omaha, Nebraska, Maids franchises its rights in the system to numerous parties throughout the United States.

On April 10, 1989, Maids signed a franchise agreement with a corporation owned and operated by the Debtors named Award Services, Inc. ("Award"). In addition to signing on behalf of Award, the Debtors signed the agreement personally as guarantors of Award's performance thereunder. The agreement also includes the Debtors within the meaning of the term "Franchise", thereby making them jointly responsible with Award. Under the agreement, Maids gave Award the exclusive right to use its system and the name "Maids" in Concord, Massachusetts and in several nearby towns. In return, Award paid Maids $15,900 and obligated itself (and the Debtors) to pay Maids a royalty based on a percentage of its gross sales at rates which range from 4.5% to 7%, depending upon the amount of weekly gross sales. The agreement was for an initial term of five years.

The following provisions of the franchise agreement are of relevance to the present proceeding:

## XV. COVENANTS

. . . . .

C. FRANCHISEE further covenants that for a period of two (2) years after the termination or nonrenewal of the franchise, regardless of the cause of termination, it shall not, either directly or indirectly, for itself, or on behalf of or in conjunction with any other person, persons, partnership or corporation, own, maintain, engage in, or participate in the operation of a maintenance and cleaning service system within a radius of fifty (50) miles of the area designated hereunder or any then existing The Maids Unit Franchise.

. . . . .

E. FRANCHISEE acknowledges that a violation of any covenant in this Paragraph will cause irreparable damage to FRANCHISOR, the exact amount of which may not be subject to reasonable or accurate ascertainment, and therefore, FRANCHISEE does hereby consent that in the event of such violation, FRANCHISOR shall as a matter of right be entitled to injunctive relief to restrain FRANCHISEE, or anyone acting for or on behalf (sic), from violating said covenants, or any of them. Such remedies, however, shall be cumulative and in addition to any other remedies to which FRANCHISOR may then be entitled. FRANCHISEE represents and acknowledges that in the event of the termination of this Agreement for whatever cause, its experience and capabilities are such that it can obtain employment in business engaged in other lines or of a different nature than that of the operation of a maintenance and cleaning service franchise and that the enforcement of a remedy by way of injunction will not prevent it from earning a livelihood. In the event FRANCHISOR brings suit to enforce any provision hereof, FRANCHISOR shall be entitled to receive, in addition to any relief or remedy granted, the cost of bringing such suit, including reasonable attorney's fees. The covenants set forth in this Paragraph XV shall survive the termination or expiration of this Agreement.

.　　.　　.　　.　　.

## XVIII. RESOLUTION OF DISPUTE

Except as to a breach for non-payment of any fee for royalty or advertising as set forth heretofore, any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration conducted in Omaha, Nebraska in accordance with the commercial Arbitration Rules of the American Arbitration Association and judgement upon any award rendered by the Arbitrator may be en-

tered in any court having jurisdiction thereof.

.　　.　　.　　.　　.

## XXVIII. LIABILITY FOR BREACH

In the event of any default on the part of either party hereto, in addition to any other remedies of the aggrieved party, the party in default shall pay to the aggrieved party all amounts due and all damages, costs and expenses, including reasonable attorneys fees, incurred by the aggrieved party as a result of any such default.

.　　.　　.　　.　　.

## XXXII. APPLICABLE LAW

This Agreement was accepted in the State of Nebraska and shall be interpreted and construed under the laws thereof, which laws shall prevail in the event of any conflict of laws, except to the extent governed by the United States Trademark Act of 1946 (Lanham Act, 15 U.S.C. Sections 1051 et seq.).

.　　.　　.　　.　　.

## XXXIII. EQUITABLE RELIEF

Nothing herein contained shall bar the right of either party to obtain injunction relief against threatened conduct that will cause loss or damages under the usual equity rules, including the applicable rules for obtaining preliminary injunctions, provided an appropriate bond against damages be provided.

.　　.　　.　　.　　.

## XXXIV. FRANCHISEE

The term "FRANCHISEE" shall include all persons who succeed to the interest of the original FRANCHISEE by transfer or operation of law and shall be deemed to include not only the individual or entity defined as "FRANCHISEE" in the introductory paragraph of this Agreement, but shall also include all partners of the entity that executes this Agreement in the event said entity is a partnership and all shareholders, officers and directors of the entity that executes this Agreement in the event said entity is a corporation. By their signatures hereto, all partners, share-

holders, officers and directors of the entity that signs this Agreement as FRANCHISEE acknowledge and accept the duties and obligations imposed upon each of them individually by the terms of this Agreement. The singular usage incudes the plural and the masculine and neuter usages include the other and the feminine.

The franchisee agreement expired on April 9, 1994, the end of its five year term. Thereafter, the Debtors commenced operation of a cleaning service within the franchised territory. They operate the business under the name "Mops" and do not hold themselves out as operating a franchise of Maids.

Maids responded to this competition with a series of legal actions. It first commenced an arbitration proceeding in Omaha with the American Arbitration Association. This was uncontested by the Debtors. On March 31, 1995, the arbitrator awarded Maids damages (including interest) of $29,232. He also ordered the Debtors to cease and desist the ownership or operation of a maintenance and cleaning service until April 9, 1996, within a radius of fifty miles from the franchised area or within a radius of fifty miles from any Maids franchise existing on April 9, 1994. Maids then brought suit in the District Court of Douglas County, Nebraska. On July 20, 1995, that court entered a default judgment against the Debtors in the sum of $61,056. Apparently this was in part a confirmation of the arbitration award. At no time has any court entered an injunction against the Debtors competing, in confirmation of the arbitration award or otherwise. Maids next brought its attack closer to home. On November 1, 1995, it filed suit on the judgment in the District Court of Concord, Massachusetts. That court authorized attachments of the Debtors' residence and bank accounts.

Shortly thereafter, on November 13, 1995, the Debtors filed a petition with this court requesting entry of an order for relief under chapter 7 of the Bankruptcy Code. Undeterred, Maids on January 25, 1996 filed its complaint commencing the present adversary proceeding. In its complaint Maids requested an injunction against the Debtors owning or operating a maintenance and cleaning establishment within a fifty mile radius of the franchised territory. At the same time, Maids filed a motion for a temporary restraining order and asked for an emergency hearing. At the hearing on February 5, 1996, I denied the motion, dismissed the complaint and ordered Maids to file a proof of claim. Maids thereafter filed a proof of claim within the permissible filing period.

## II. VALIDITY OF DEBTORS' COVENANT NOT TO COMPETE

The franchise agreement states it shall be "interpreted and construed" under the law of Nebraska, which the agreement says is where Maids accepted it.[1] Contracting parties may stipulate as to the jurisdiction whose law shall govern their contract, particularly when one of them has a place of business in the named jurisdiction or the contract was executed there.[2] In any event, for our purposes the laws of Nebraska, Massachusetts, and elsewhere are essentially the same as to the validity and enforceability of the Debtors' covenant not to compete.

Covenants not to compete are often made by sellers of small businesses, key employees, franchisees and partners. The covenant is generally valid under state law so long as its time period, geographic area and covered activities go no further than what is reasonably necessary to protect the other's business and goodwill.[3] For this reason, the

---

1. The agreement does not say it shall be "governed" or "enforced" in accordance with Nebraska law, so that arguably Nebraska law applies only to resolve ambiguities.

2. *Morris v. Watsco, Inc.,* 385 Mass. 672, 433 N.E.2d 886 (1982); *see Maxwell Shapiro Woolen Co. v. Amerotron Corp.,* 339 Mass. 252, 158 N.E.2d 875 (1959); *Nissenberg v. Felleman,* 339 Mass. 717, 162 N.E.2d 304 (1959).

3. *E.g., Jiffy Lube Int'l., Inc. v. Weiss Bros., Inc.,* 834 F.Supp. 683 (D.N.J.1993); *Shipley Co. v. Clark,* 728 F.Supp. 818 (D.Mass.1990); *Chambers–Dobson, Inc. v. Squier,* 238 Neb. 748, 472 N.W.2d 391 (1991); *American Sec. Servs., Inc. v. Vodra,* 222 Neb. 480, 385 N.W.2d 73 (1986); *Boisen v. Petersen Flying Serv.,* 222 Neb. 239, 383 N.W.2d 29 (1986); *Whitinsville Plaza, Inc. v. Kotseas,* 378 Mass. 85, 390 N.E.2d 243 (1979); *Central Water Works Supply, Inc. v. Fisher,* 240

wording of the covenant is usually restricted in time and area, and sometimes in scope of activity. The Debtors' covenant was so restricted. It is valid and enforceable.

## III. MAIDS' INJUNCTIVE RIGHTS AS A "CLAIM"

 The Debtors are clearly in breach of their covenant not to compete. Breach of the ordinary contract gives rise only to a claim for damages. Maids, however, has the additional right under state law to obtain an injunction against the Debtors' competition, without regard to the provision in the agreement permitting such relief.[4] Although

many of the decisions do not reach the issue,[5] engaging instead in what is often a mechanical search for "executoriness,"[6] breach of a covenant not to compete presents a question which has proven difficult for the courts: Do the nondebtor's injunctive rights constitute a "claim" so as to be subject to discharge? The Debtors' discharge hinges upon this issue. A discharge in bankruptcy releases a debtor only as to liability on a "debt,"[7] which is defined as "liability on a claim."[8]

The Code defines "claim" as follows:

(A) right to payment, whether or not such right is reduced to judgment, liqui-

Ill.App.3d 952, 181 Ill.Dec. 545, 608 N.E.2d 618 (1993); *Property Tax Assocs., Inc. v. Staffeldt*, 800 S.W.2d 349 (Tex.Ct.App.1990); *Pollack v. Calimag*, 157 Wis.2d 222, 458 N.W.2d 591 (1990); *Cooper v. Gidden*, 515 So.2d 900 (Miss.1987); RESTATEMENT (SECOND) OF CONTRACTS § 188 (1981). Covenants not to compete signed by employees are scrutinized more closely. *See, e.g., Chambers–Dobson*, 472 N.W.2d 391; *Boisen*, 383 N.W.2d 29; *Fogle v. Shah*, 539 N.E.2d 500 (Ind. Ct.App.1989); *Wells v. Wells*, 9 Mass.App.Ct. 321, 400 N.E.2d 1317 (1980).

4. *E.g., Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441 (11th Cir.1991); *MedX Inc. of Fla. v. Ranger*, 780 F.Supp. 398 (E.D.La.1991); *Hopper v. All Pet Animal Clinic, Inc.*, 861 P.2d 531 (Wy.1993); *Chambers–Dobson*, 472 N.W.2d 391; *American Sec. Servs.*, 385 N.W.2d 73; *Brian McDonagh S.C. v. Moss*, 207 Ill.App.3d 62, 151 Ill.Dec. 888, 565 N.E.2d 159 (1990); *Dad's Properties, Inc. v. Lucas*, 545 So.2d 926 (Fla.Dist.Ct. App.1989); *Frank D. Wayne Assocs., Inc. v. Lussier*, 16 Mass.App.Ct. 986, 454 N.E.2d 109 (1983).

5. Apparently assuming the nondebtor party has a claim subject to discharge, some courts merely authorize rejection of the covenant on the ground it is part of an executory contract, as the court defines that phrase. *See, e.g., JRT, Inc. v. TCBY Sys., Inc. (In re JRT, Inc.)*, 121 B.R. 314 (Bankr.W.D.Mich.1990); *In re Constant Care Community Health Ctr., Inc.*, 99 B.R. 697, 19 BCD 275 (Bankr.D.Md.1989); *Silk Plants Etc. Franchise Sys., Inc. v. Register (In re Register)*, 95 B.R. 73 (Bankr.M.D.Tenn.1989), *aff'd* 100 B.R. 360 (M.D.Tenn.1989); *In re Allain*, 59 B.R. 107 (Bankr.W.D.La.1986); *In re Norquist*, 43 B.R. 224 (Bankr.E.D.Wash.1984); *Burger King Corp. v. Rovine Corp. (In re Rovine Corp.)*, 6 B.R. 661, 6 BCD 1285 (Bankr.W.D.Tenn.1980). Other courts deny rejection because they conclude no executory contract exists, implicitly affirming enforcement of the other party's injunctive rights. *See, e.g., In re Cutters, Inc.*, 104 B.R. 886 (Bankr. M.D.Tenn.1989); *In re Noco, Inc.*, 76 B.R. 839 (Bankr.N.D.Fla.1987); *In re Cooper*, 47 B.R. 842,

12 BCD 1135 (Bankr.W.D.Mo.1985). Still others hold no injunctive rights are present because the other party has not suffered irreparable harm. *See, e.g., In re Audra–John Corp.*, 140 B.R. 752, 23 BCD 18 (Bankr.D.Minn.1992). These latter courts confuse the inadequacy rule governing all injunctions and the irreparable injury rule applicable to preliminary injunctions. *See* OWEN M. FISS & DOUG RENDLEMAN, INJUNCTIONS 59 (2d ed. 1984).

6. I will not waste ink and trees going through the usual protracted exercise for a determination of whether a covenant not to compete is an "executory contract" within the meaning of section 365 of the Code. With performance remaining due only on the part of the Debtors, the covenant here is obviously not an executory contract. *See* H.R. REP. No. 595, 95th Cong., 1st Sess. 347 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6303 (term executory contract "generally includes contracts on which performance remains due to some extent on both sides"); S.REP. No. 989, 95th Cong., 2d Sess. 58 (1978), U.S.Code Cong. & Admin.News 1978, p. 5844 (same). In any event, as is true in most cases, it makes no difference whether the covenant falls within the meaning of that mystical term. If the Debtors' covenant is an executory contract, it is now deemed rejected. Rejection is automatic upon lapse of sixty days from the order granting the Debtors relief under chapter 7 and the absence of the trustee expressly assuming or rejecting the contract. 11 U.S.C. § 365(d)(1) (1988). Rejection "constitutes a breach ... immediately before the date of the filing of the petition." 11 U.S.C. § 365(g)(1) (1988). The question is then whether Maids' injunctive rights concerning the breach constitutes a claim. If the covenant is not an executory contract, the question is the same—whether Maids' injunctive rights are a claim.

7. 11 U.S.C. § 524(a) (1988).

8. 11 U.S.C. § 101(12) (1988 & Supp. V 1993).

dated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.[9]

 Maids unquestionably has a "right to an equitable remedy" for breach of the Debtors' covenant. But does the breach also give rise to a "right to payment" within the meaning of the statute? That question is not answered by Maids having obtained a damage judgment. As shall be explained, the damages available for breach of the covenant must be an alternative to an equitable remedy if "a right to payment" is to be present. For all we know, the arbitration award and default judgment Maids obtained were only for damages accrued to the date of the hearings, and did not include the future damages that are an alternative to equitable relief.

 The only order issued against the Debtors competing is the arbitrator's cease and desist order. No court has entered an injunction against the competition. Even if one had, it would make no difference on the claim issue. The inclusion of an equitable remedy within the definition of "claim" applies "whether or not such right to an equitable remedy is reduced to judgment...."[10]

The Supreme Court's decision in *Ohio v. Kovacs*[11] did not involve a covenant not to compete, but it deals with the meaning of the phrase "right to payment" in the context of paragraph (B) of the claim definition. *Kovacs* has been influential in cases involving covenants not to compete. The debtor was the chief executive officer and stockholder of a corporation owning a hazardous waste site located next to a river. Prior to the bankruptcy filing, the State of Ohio had gone into state court and obtained a $75,000 judgment against the debtor and others for damage from fish kills and an injunction ordering a cleanup of the property by removal of specified wastes. When the defendants failed to comply with the cleanup order, the state court appointed a receiver, who was directed to take possession of the property and commence the cleanup. Before the receiver had completed his assignment, the debtor filed a bankruptcy petition. Ohio countered by instituting a proceeding in state court to discover the debtor's current income and assets, in preparation for making a reimbursement claim against him. The bankruptcy court stayed that proceeding. The State also filed a complaint in bankruptcy court seeking a declaration that its rights under the cleanup order were not a "claim" within the meaning of the Bankruptcy Code. The courts below ruled against it on this issue.

The Court in *Kovacs* examined the rulings of the lower courts at some length. The lower courts had stressed various considerations: the necessity that the debtor spend money to comply with his cleanup obligations, the debtor's inability to perform the cleanup, the State's possession of the site through the receiver, and the State's conduct indicating its intention to seek reimbursement from the debtor for the cleanup costs.[12] In light of all these circumstances, the Court concluded that as a practical matter the State's claim was a monetary one falling within the definition of "claim." It stated: "[W]e cannot fault the Court of Appeals for concluding that the cleanup order had been converted into an obligation to pay money, an obligation that was dischargeable in bankruptcy."[13]

 *Kovacs* bears close study. The Court made no attempt to analyze the statutory definition of claim, except to note that the phrases "equitable remedy," "breach of performance" and "right to payment" are

---

9. 11 U.S.C. § 101(5) (1988 and Supp. V 1993).

10. *Id.*

11. 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649, 12 BCD 541 (1985).

12. *Id.* at 280–83, 105 S.Ct. at 708–10, 12 BCD at 544–45.

13. *Id.* at 283, 105 S.Ct. at 709–10, 12 BCD at 545.

**710**

undefined.[14] For an equitable remedy to be a claim, the definition requires only that the breach giving rise to the equitable remedy also give rise to a "right" to payment. It imposes no requirement that the claimant exercise his right to payment or show an intent to exercise it. Yet, without pointing to statutory language, the Court saw significance in the State's intention to seek reimbursement for cleanup costs. Nor does the statute say compliance with a court decree granting the equitable remedy must involve an expenditure of money. The Court nevertheless quotes with apparent approval from the opinion of the bankruptcy court requiring such linkage.[15] Indeed, the Court took pains to tie its opinion to all the various views of the lower courts. This makes the decision vague. The Court also seemed intent on confining its rationale to the particular facts before it. It apparently took this approach because of the inherent difficulty in meshing the compelling environmental concerns before it with a Bankruptcy Code which promotes a fresh start and gives no priority to prepetition environmental claims. The reasoning employed in *Kovacs* should therefore not be binding in cases involving covenants not to compete.

Some courts nevertheless rely upon *Kovacs* or its progeny in cases dealing with covenants. They hold that a right to injunctive relief against the debtor's competition is not a claim, and hence is not dischargeable, because compliance with the injunction involves no monetary expenditure.[16]

There is also case law rejecting application of the *Kovacs* reasoning to these covenants. In *In re Kilpatrick,*[17] before the bankruptcy filing a state court had enjoined the debtor from breaching his covenant not to compete. In discussing *Kovacs,* the court observed that the statutory definition of "claim" speaks only of a "right" to payment, without imposing any requirement that the claimant pursue that right or disavow the equitable remedy. Because under state law the beneficiary of a covenant can elect to receive either damages or an injunction, the court held injunctive rights are a claim.

Another line of cases holds the other party's right to an injunction against the debtor's competition is not a claim because only monetary rights fall within the statutory definition.[18] These decisions contain no statutory analysis. Some seem largely motivated by facts which evoke no sympathy for the debtor. For example, in *In re Carrere,*[19] the debtor was an actress with a contract to perform in the television series "General Hospital". She filed for bankruptcy in order to reject that contract and be free to perform in another television series for more money. The court was justifiably underwhelmed by her plight.

Focussing more on the statutory definition, some courts hold the nondebtor party's injunctive right is not a claim because it is present only if the remedy at law is "inadequate", or only if the threatened harm is "irreparable," concluding from this that the nondebtor has no right to payment within the meaning of the statutory definition.[20] Al-

14. Of these phrases, only the meaning of "breach of performance" was contested. The Court held this phrase encompassed breach of an obligation imposed by law as well as by private contract. *Id.* at 279, 105 S.Ct. at 707–08, 12 BCD at 543.

15. *Id.* at 281, 105 S.Ct. at 708–09, 12 BCD at 544.

16. *E.g., R.J. Carbone Co. v. Nyren (In re Nyren),* 187 B.R. 424 (Bankr.D.Conn.1995); *In re Hughes,* 166 B.R. 103 (Bankr.S.D.Ohio 1994); *May v. Charles Booher & Assocs., Inc. (In re May),* 141 B.R. 940 (Bankr.S.D.Ohio 1992); *In re Peltz,* 55 B.R. 336 (Bankr.M.D.Fla.1985) (same).

17. 160 B.R. 560 (Bankr.E.D.Mich.1993).

18. *Fellerman and Cohen Realty Corp. v. Clinical Plus Inc. (In re Hirschhorn),* 156 B.R. 379

(Bankr.E.D.N.Y.1993); *Thomas v. Herzog (In re Thomas),* 133 B.R. 92 (Bankr.N.D.Ohio 1991); *In re Don & Lin Trucking Co., Inc.,* 110 B.R. 562, 20 BCD 58 (Bankr.N.D.Ala.1990); *In re Noco, Inc.,* 76 B.R. 839 (Bankr.N.D.Fla.1987); *In re Carrere,* 64 B.R. 156, 14 BCD 977 (Bankr. C.D.Cal.1986).

19. 64 B.R. 156, 14 BCD 977.

20. *E.g., In re Printronics, Inc.,* 189 B.R. 995, 28 BCD 333 (Bankr.N.D.Fla.1995); *Oseen v. Walker (In re Oseen),* 133 B.R. 527 (Bankr.D.Idaho 1991); *In re Cox,* 53 B.R. 829 (Bankr.M.D.Fla. 1985); *see also Sheerin v. Davis (In re Davis),* 3 F.3d 113, 117, 24 BCD 1108, 1110 (5th Cir.1993) (equitable remedy of resulting trust not a claim because state law "does not view payment of money as alternative to the maintenance of the

though these courts are correct in ruling a right to payment must exist under nonbankruptcy law,[21] their holding that there is no right to payment for breach of a covenant not to compete conflicts with the damage rights of the beneficiary of a covenant as well as with the general standard employed by courts in determining whether a party's remedy at law is adequate. This requires some explanation.

An injunction against breach of the covenant is a grant of specific performance.[22] As a result of the historical separation of courts of law and equity, such an equitable remedy is available only if the remedy at law, typically damages, is "inadequate."[23] Courts take into account a number of factors in determining whether damages are inadequate. Principal among them are difficulty in proving the existence and amount of damages with reasonable certainty, difficulty in collecting a monetary judgment, and uncertainty that the benefits of a monetary judgment would be equivalent to the promised performance.[24] The rule has been stated as follows: "The adequate remedy at law, which will preclude the grant of specific performance of a contract by a court of equity, must be as certain, prompt, complete, and efficient to attain the ends of justice as a decree of specific perfor-

mance."[25] Put another way, "the remedy at law, in order to exclude a concurrent remedy at equity, must be as complete, as practical and as efficient to the ends of justice and its prompt administration, as the remedy at equity."[26]

Courts thus compare the remedies at law and equity to see which is more effective in serving the ends of justice. Difficulty in fixing damages is only one factor in that equation. In any event, damages need only be difficult, not impossible, to prove for equitable relief to be available.[27] Comparison of the two remedies usually leads to the grant of equitable relief.[28] Doubts as to the adequacy of the remedy at law are resolved in favor of granting equitable relief.[29] In sum, courts look quite favorably upon equitable relief. This has led one author to conclude that the adequate remedy rule is essentially dead.[30]

Loss of future profits is typically a principal element of damages for breach of a covenant not to compete. The evidentiary problems here for Maids and other covenant beneficiaries are obvious. The proof involves futuristic projections which are especially subject to contest. Courts therefore readily grant an injunction for breach of a covenant

---

equitable owner's interest in the property," even though there may be a right to damages).

**21.** Property and contract rights implicated in bankruptcy disputes are determined in accordance with state law. *E.g., Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Ralar Distrib., Inc. v. Rubbermaid, Inc. (In re Ralar Distrib., Inc.)*, 4 F.3d 62, 67–68 (1st Cir.1993).

**22.** Spencer W. Symons, 5 Pomeroy's Equity Jurisprudence § 934(b) (5th ed. 1941).

**23.** Restatement (Second) of Contracts § 359 (1981); Walter H.E. Jaeger, 11 Williston On Contracts § 1418 (3d ed. 1968); Fiss, *supra* note 5, at 59–79.

**24.** *E.g.,* Arthur L. Corbin, 5A Corbin On Contracts § 1142 (1964); Restatement (Second) Of Contracts § 360 (1981).

**25.** *National Marking Mach. Co. v. Triumph Mfg. Co.*, 13 F.2d 6, 9 (8th Cir.1926); *see also, e.g., Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir.1991); *Laclede Gas Co. v.*

*Amoco Oil Co.*, 522 F.2d 33, 40 (8th Cir.1975) (quoting *National Marking Machine*); *ABA Distrib., Inc. v. Adolph Coors Co.*, 542 F.Supp. 1272, 1293 (W.D.Mo.1982).

**26.** *Walla Walla City v. Walla Walla Water Co.*, 172 U.S. 1, 12, 19 S.Ct. 77, 82, 43 L.Ed. 341 (1898).

**27.** *E.g., Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585, 72 S.Ct. 863, 865–66, 96 L.Ed. 1153 (1952); *Ferrero*, 923 F.2d at 1449; *Frank D. Wayne Assocs., Inc. v. Lussier*, 16 Mass. App.Ct. 986, 454 N.E.2d 109 (1983); *Fuchs v. United Motor Stage. Co.*, 135 Ohio St. 509, 14 O.O. 399, 21 N.E.2d 669 (1939).

**28.** *See* Restatement (Second) of Contracts § 359, cmt. a. (1981); U.C.C. § 2–716, cmt. 2.

**29.** Restatement (Second) of Contracts § 359, cmt. a. (1981).

**30.** Douglas Laycock, *The Death of the Irreparable Injury Rule*, 103 Harv.L.Rev. 688 (1990).

not to compete.[31] Indeed, the injured party invariably requests injunctive relief because an injunction gives strong assurance he will receive precisely what was bargained for. This avoids the trauma of future injury, the need to prove damages, and problems in collecting a money judgment. The request for equitable relief has historically been regarded as the election of a preferred remedy.[32]

If the beneficiary of a covenant not to compete elects to receive damages for loss of future profits, he gets the lost profits.[33] Lost profits are a proper element of damages for any breach of contract so long as at the time of the contract the breaching party had reason to know they would be the probable result of breach.[34] The Debtors certainly had that knowledge. The purpose of their covenant was to protect Maids' business. Although damages must be established with reasonable certainty,[35] an approximation rather than mathematical accuracy is all that is required.[36] The perceived difficulty in proving lost profits is less present today because of the receptive attitude of modern courts toward proof of sophisticated financial data through expert testimony.[37] The award

of damages for lost future profits is now a commonplace remedy for breach of all kinds of contracts.[38]

Maids therefore has the right to obtain either damages for the Debtors' future competition or an injunction against the competition.[39] As a result, in the words of the statute, Maids has a "right to an equitable remedy for breach of performance ... [which] breach gives rise to a right to payment.... [40] As an alternative remedy, this right to payment permits a dollar sign to be placed on the equitable remedy, as is done with other claims. Including equitable remedies within the statute's definition of "claim" is therefore supported by a strong bankruptcy policy—equal treatment of similar rights. And because a "claim" is subject to discharge, another important bankruptcy policy is promoted—the policy favoring a debtor's fresh start, unencumbered by past commitments.[41]

In *In re Udell*,[42] the Seventh Circuit came to the opposite conclusion, and in the process added greatly to the confusion in this troubled area of the law. The debtor there had signed an agreement not to compete with his former employer, Standard Carpet-

---

**31.** *E.g., Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1449 (11th Cir.1991).

**32.** STORY'S EQUITY JURISPRUDENCE § 994 (14th ed. 1918).

**33.** *See, e.g., N.I.S. Corp. v. Hallahan (In re Hallahan)*, 936 F.2d 1496, 1502 (7th Cir.1991); *National Micrographics Sys., Inc. v. OCE–Industries, Inc.*, 55 Md.App. 526, 465 A.2d 862, 868–69 (1983); *Tower Oil & Technology Co., Inc. v. Buckley*, 99 Ill.App.3d 637, 54 Ill.Dec. 843, 851, 425 N.E.2d 1060, 1068 (1981).

**34.** RESTATEMENT (SECOND) OF CONTRACTS § 351 (1981).

**35.** RESTATEMENT (SECOND) OF CONTRACTS § 352 (1981).

**36.** *Id.*, cmt. a.

**37.** *Id.*

**38.** *E.g., Superbird Farms, Inc. v. Perdue Farms, Inc.*, 970 F.2d 238, 246–47 (7th Cir.1992); *Roboserve, Ltd. v. Tom's Foods, Inc.*, 940 F.2d 1441, 1450–52 (11th Cir.1991); *State Office Sys., Inc. v. Olivetti Corp. of America*, 762 F.2d 843, 846–47 (10th Cir.1985); *Litman v. Massachusetts Mut.*

*Life Ins. Co.*, 739 F.2d 1549, 1559 (11th Cir.1984) *cert. denied*, 484 U.S. 1006, 108 S.Ct. 700, 98 L.Ed.2d 652 (1988); *Boothby v. Texon, Inc.*, 414 Mass. 468, 608 N.E.2d 1028, 1038–39 (1993); *Barrett v. Larsen*, 256 Mont. 330, 846 P.2d 1012, 1018 (1993); *Sterling Dev. Co. v. Collins*, 309 S.C. 237, 421 S.E.2d 402, 405 (1992); *MacLean & Assocs., Inc. v. American Guaranty Ins. Co.*, 85 Or.App. 284, 736 P.2d 586, 594 (1987).

**39.** He is also entitled to compensation for any damages already incurred. *E.g., Riverview Floral, Ltd. v. Watkins*, 51 Wash.App. 658, 754 P.2d 1055 (1988) *modified on other grounds*, 51 Wash. App. 658, 764 P.2d 1012.

**40.** 11 U.S.C. § 101(5) (1988 & Supp. V 1993); *see* National Bankruptcy Conference, Reforming The Bankruptcy Code 202 (1994), which adopts this view.

**41.** *See, e.g., Local Loan Co. v. Hunt*, 292 U.S. 234, 244–45, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934) (state law recognizing effectiveness of debtor's assignment of future wages ruled invalid in bankruptcy because of conflict with fresh start policy of bankruptcy law).

**42.** 18 F.3d 403 (7th Cir.1994).

land USA, Inc. The covenant was for three years, commencing on termination of employment, and covered a fifty mile radius from the store where the debtor worked. It further provided: "In the event of [the debtor's] actual or threatened breach of the [covenant], Carpetland shall be entitled to an injunction restraining [the debtor] as well as reimbursement for reasonably [sic] attorneys fees incurred in securing said judgment and stipulated damages in the sum of $25,000." Soon after leaving his employment, the debtor purchased a carpet store which he claimed did not compete in the same market as Carpetland's. He sued Carpetland in state court, seeking past due commissions and other compensation. Contending the debtor had breached his agreement not to compete, Carpetland counterclaimed for damages and an injunction against the debtor operating his new store. The state court issued the requested preliminary injunction. The debtor appealed and then filed a chapter 13 petition. Carpetland moved for relief from the automatic stay in order to pursue the state court litigation.

In approving relief from stay as a proper exercise of discretion, the Seventh Circuit in *Udell* held Carpetland's injunctive rights were not a "claim" and hence were not dischargeable in bankruptcy.[43] Although not finding the statutory definition of claim ambiguous, the court nevertheless looked to the legislative history[44] that accompanied the final version of the definition, which reconciled differences in the House and Senate bills.[45] It saw significance in the following statement made on the floors of both houses of Congress:

Section 101(4)(B) [now § 101(5)(B) ] represents a modification of the House-passed bill to include [sic] the definition of "claim" a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment. This is intended to cause the liquidation or estimation of contingent rights of payment for which there may be an alternative equitable remedy with the result that the equitable remedy will be susceptible to being discharged in bankruptcy. For example, in some States, a judgment for specific performance may be satisfied by an alternative right to payment, in the event performance is refused; in that event the creditor entitled to specific performance would have a "claim" for purposes of proceeding under title 11.

On the other hand, rights to an equitable remedy for breach of performance with respect to which such breach does not give rise to a right to payment are not "claims" and would therefore not be susceptible to discharge in bankruptcy.[46]

The *Udell* court constructed a confusing alternative test from this floor statement. It seized on the awkward phrase "with respect

---

**43.** In so holding, the Seventh Circuit reversed the district court, which had ruled Carpetland's injunctive rights constituted a claim because the $25,000 liquidated damage clause gave it a "right to payment" within the meaning of the statutory definition of "claim." To qualify as the grant of a right to payment within the meaning of the statute, the district court reasoned, the liquidated damage clause must provide compensation for both past and future damage and hence be the monetary equivalent of an injunction. It concluded the clause qualified because it was stated to be compensation for "actual or threatened harm...." This is questionable. There is no reason to require that the clause provide compensation for both past and future damages. The parties apparently intended liquidated damages to be compensation for past damages and an injunction to be protection against incurring future damages.

**44.** As justification for examining legislative history, the court relied on *Ohio v. Kovacs*, 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985),

where the Supreme Court inexplicably looked at the same legislative history without first finding ambiguity. The Supreme Court there merely observed that the statute's phrases "equitable remedy," "breach of performance" and "right to payment" are not defined. 469 U.S. at 280, 105 S.Ct. at 708, 12 BCD at 544. Its only comment on the legislative history was that it is "sparse." *Id.*

**45.** The definition in the Senate bill included only "right to payment", with no reference to an equitable remedy. S. 2266, 95th Cong., 2d Sess. § 101(4) (1978). The House bill referred to an equitable remedy in these words: "right to an equitable remedy for breach of performance if such breach does not give rise to a right to payment...." H.R. 8200, 95th Cong. 1st Sess. § 101(4)(B) (1977).

**46.** 124 CONG.REC. H11090 (daily ed. Sept. 28, 1978); S17406 (daily ed. Oct. 6, 1978) (statements of Rep. Edwards and Sen. DeConcini).

to which such breach does not give rise to a right to payment" appearing in the last sentence. Because the phrase arguably modifies "equitable remedy" rather than "breach of performance," the court concluded equitable rights are a claim if payment arises from their exercise. This is opposed to the wording of the statute, which clearly requires that the breach, not the equitable remedy, give rise to a right to payment. And the test makes no sense because equitable remedies are typically designed to provide nonmonetary relief. Having thus created a virtually unpassable test, the court ruled it was flunked by the facts before it because the right to obtain liquidated damages arose from the contract, not from an equitable remedy under it.

The *Udell* court also fashioned another test which, if passed, would make an equitable remedy a claim. It here focussed on the reference in the floor statement to a right to payment being an "alternative" to the equitable remedy.[47] From this the court concluded *all* right to payment must be an alternative to the equitable remedy. Because state courts would enforce the parties' agreement by granting both damages and an injunction, the court ruled an alternative right to payment was not present, so Carpetland's rights failed this test as well. This reasoning ignores Carpetland's right to damages for future loss, which *is* an alternative to its equitable remedy. The floor statement's reference to a right to payment being an alternative to equitable relief is understandable because the claim for future loss is the monetary equivalent to the right to an injunction against further competition. Nor is there any reason to believe Congress intended that this alternative right to payment be the only right to payment. The statute does not say so. The injured party is obviously entitled to compensation for damages already incurred by the time of trial, as well as to an injunction against future competition.[48] The liquidated damage clause before

the court was presumably designed to provide this compensation because the parties also agreed upon an injunction to prevent future loss. *Udell* thus commits the double sin of elevating legislative history above the statute's plain wording and then misunderstanding the legislative history.

The real basis for the *Udell* court's holding emerges from the concurring opinion of Judge Raum. He thought the majority opinion "dodges this statute's plain language in an effort to reach a sensible result."[49] To Judge Raum, and one suspects to the other panel members, discharge in bankruptcy of an injunction against competition is like a bankruptcy discharge of an injunction against trespassing, polluting, stalking or battering. Because he thought the debtor's discharge would have similar "patently absurd consequences,"[50] Judge Raum believed the plain language of the statute should not be followed.

Judge Raum's reasoning leaves much to be desired as well, quite apart from his willingness to elide what he admits to be the statute's plain wording. The case concerned breach of contract, not trespass, pollution, stalking or battery. Moreover, trespass and the like is prohibited by law, without regard to the existence of an injunction. So a bankruptcy discharge does not terminate the obligation to refrain from such conduct. In the final analysis, the decision in *Udell* comes down to this: The court could not bring itself to equate an injunction against breach of contract with a monetary judgment for breach of contract which is routinely discharged in bankruptcy.

## IV. CONCLUSION

In summary, although the decisions are in disarray, Maids' alternative right to damages from the Debtors' future competition in breach of their covenant not to compete is a "right to payment" within the meaning of the statutory definition of an equitable claim.

---

47. *Udell,* 18 F.3d at 407.

48. *See, e.g., Riverview Floral, Ltd., v. Watkins,* 51 Wash.App. 658, 754 P.2d 1055 (1988) *modified on other grounds,* 51 Wash.App. 658, 764 P.2d 1012.

49. 18 F.3d at 410.

50. *Id.* at 411.

Hence, under the definition, Maids' injunctive rights constitute a claim. That state courts consider damages inadequate when compared to the equitable remedy of an injunction is beside the point. Although damages for breach of the covenant, particularly damages for lost future profits, are difficult to fix, courts are perfectly capable of doing so. This alternative right to damages fits into the statutory definition of an equitable claim very well. The same breach, a debtor's competition and threat of further competition, "gives rise" to both a damage claim and injunctive rights. The definition imposes no requirement that the claimant elect to receive a monetary payment, that compliance with the injunction require an expenditure of funds, or that the equitable remedy, as opposed to the breach, give rise to a right to payment. Following the statute's plain meaning promotes two fundamental policies of the Bankruptcy Code—the policy favoring a debtor's fresh start and the policy favoring equality among holders of similar rights.