In re Norman Chris BROWN, aka
Chris Brown; dba Final
Touch, Debtor.

Dent Wizard International Corp., a
Florida Corporation, Plaintiff,

v.

Norman Chris Brown, aka Brown;
dba Final Touch, Defendant.

Bankruptcy No. SV–98–13899 KL.
Adversary No. SV–98–01425 KL.

United States Bankruptcy Court,
C.D. California.

April 27, 1999.

Elissa D. Miller, Sulmeyer, Kupetz, Bauman & Rothman APC, Los Angeles, CA, Brian Behar, Behar, Gutt & Glazer, PA, Aventura, FL, for plaintiff.

Jeffrey T. Vanderveen, Law Offices of Jeffrey T. Vanderveen, Laguna Hills, CA, for defendant.

Byron Z. Moldo, Los Angeles, CA, trustee.

## MEMORANDUM ON ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

KATHLEEN T. LAX, Bankruptcy Judge.

Plaintiff Dent Wizard International Corp. ("Dent Wizard") seeks summary judgment against defendant Norman Chris Brown, aka Chris Brown, dba Final Touch ("Brown"), determining that, as a matter of law, Brown's debt to Dent Wizard is nondischargeable in bankruptcy. Dent Wizard seeks judgment for nondischargeability with respect to a Judgment for Permanent Injunction Order and Judgment entered against Brown in favor of Dent Wizard in the state court of the State of Missouri, as domesticated by the Los Angeles County Superior Court (the "Missouri judgment").

### I. FACTS

Dent Wizard is a Florida corporation, in the business of providing paintless automotive dent removal services pursuant to a proprietary process (the "Dent Wizard Process") and proprietary tools ("Dent Wizard Tools"). Dent Wizard requires, as a condition of becoming an employee and learning the Dent Wizard Process, that a party execute an agreement entitled "Nondisclosure and Noncompete Agreement" (the "Agreement"), covering the period during which the party is an employee Dent Wizard, as well as a period of two years after termination of that employment relationship. Post-termination restrictions include prohibitions against the former employee competing with Dent Wizard in the business of paintless dent removal (whether using the Dent Wizard Process or another process) and training others regarding any paintless dent removal process, including the Dent Wizard Process. The Agreement also required employees to surrender the Dent Wizard Tools and other confidential Dent Wizard materials to Dent Wizard upon termination of the employment relationship. The Agreement provided for Dent Wizard's right to injunctive relief, in addition to any other legal or equitable remedies, for a threatened or actual breach of the noncompete or nondisclosure obligations. In addition, the Agreement contained a forum selection clause designating the State of Missouri as the appropriate forum for disputes arising under the agreement, and a choice of law provision indicating that the Agreement would be governed by Missouri law.

In September, 1994, Brown came to work for Dent Wizard, and executed the Agreement before beginning his two-month training. The execution of the Agreement as well as the training took place in Missouri. In March, 1996, Brown's employment relationship with Dent Wizard was terminated. Thereafter, Dent Wizard began to suspect that Brown and his brother, also a former Dent Wizard technician, were competing with Dent Wizard in the Los Angeles area.

On the basis of the Agreement, Dent Wizard instituted an action in the state court of Missouri against Brown in August, 1996. The action alleged breach of contract, violation of the Missouri Uniform Trade Secrets Act (the "Trade Secrets Act"), breach of fiduciary duty, intentional and tortious interference with contracts, and conversion, based on allegations that Brown and his brother competed with

Dent Wizard by soliciting and doing business for customers of Dent Wizard, as well as repairing dents utilizing the Dent Wizard Process, and failed to return the Dent Wizard Tools. The complaint sought injunctive relief as well as damages. Brown appeared in that action and filed an answer, however he did not appear at trial.

Following trial, judgment was entered in favor of Dent Wizard against Brown (the "Missouri judgment") in April, 1997. The court found that Brown breached the Agreement. In addition the court found that the Dent Wizard Process constitutes a protectable trade secret as defined under the Trade Secrets Act, which Brown misappropriated to Dent Wizard's harm in a way that was "outrageous" and "with evil motive and/or reckless indifference to the rights of others." The court found that the harm suffered by Dent Wizard, due to breach of the Agreement, could only be addressed through permanent injunctive relief.[1] Moreover, the court found that a permanent injunction would be necessary to prevent future harm from Brown's violation of the Trade Secrets Act, given that "[t]he Trade Secret cannot be exorcised from the mind[ ] of Chris Brown ... and, therefore, any participation by Chris Brown ... in the Paintless Dent Removal Business ... would by necessity constitute misappropriation of the Trade Secret." As a result, Brown was enjoined from practicing the Dent Wizard Process, competing with Dent Wizard or in the paintless dent removal process business, soliciting Dent Wizard's customers, using or duplicating the Dent Wizard Tools and disclosing proprietary information of Dent Wizard.[2] In addition, the court awarded actual and punitive damages to Dent Wizard, for presumably past harm, due to Brown's violation of the Trade Secrets Act.

Brown did not appeal from the Missouri judgment. Dent Wizard domesticated the Missouri judgment, both as to its money damages and its injunctive relief, in the Los Angeles Superior Court on May 9, 1997, and March 30, 1998. In October, 1998, Brown appealed the March 30th judgment domesticating the injunction.

On March 20, 1998, Brown filed a petition in this court seeking protection under Chapter 7. In June, 1998, Dent Wizard filed a complaint seeking a determination from this court that both the injunction and the money damages are nondischargeable in bankruptcy. In July, 1998, this court granted Dent Wizard retroactive relief from stay to validate the March 30th judgment and enforce its injunction against Brown. Dent Wizard now seeks judgment, as a matter of law, that the Missouri judgment is nondischargeable.

## II. DISCUSSION

### A. Dischargeability of the Injunction

Dent Wizard seeks a determination that the injunction which it obtained in the Missouri judgment does not constitute a claim under Bankruptcy Code Section 101(5), and thus cannot be discharged in bankruptcy. The Code defines "claim" broadly, in relevant part, as a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." 11 U.S.C. § 101(5)(B). Thus, it is clear that, under some circumstances, injunctions can constitute claims which are dischargeable in bankruptcy. The court must determine whether this case presents such a circumstance.

A number of courts have considered whether an injunction prohibiting future breaches of a noncompete agreement can

---

1. The court did award money damages for breach of contract, however, these were for attorney's fees only. Dent Wizard does not seek a judgment of nondischargeability for these damages.

2. Only the prohibition against competition was limited to a two year period.

constitute a claim under Section 101(5)(B), reaching conflicting results based on a variety of reasonings.[3] *See e.g., In re Oseen,* 133 B.R. 527 (Bankr.D.Idaho 1991) (finding that the injunction did not constitute a claim); *In re Udell,* 18 F.3d 403 (7th Cir. 1994) (holding that the injunction did not constitute a claim); *In re Ward,* 194 B.R. 703 (Bankr.D.Mass.1996) (finding that the injunction did constitute a claim); *In re Brown,* 1997 WL 786994 (E.D.Pa.1997) (holding that the creditor's right to equitable relief constituted a dischargeable claim).

I find *Ward* convincing in its argument, regarding *Oseen,* that it is possible for breaches of covenants not to compete to be adequately compensated through an award of damages, and thus the fact that an injunction has been awarded does not necessarily require the conclusion that the remedy at law is inadequate or the threatened harm is irreparable. 194 B.R. at 710–712. In addition, *Ward* has effectively demonstrated that the majority opinion in *Udell* (as well as the concurrence) rests on a faulty reading of the statute as well as its legislative history. *Id.* at 712–714.

However, I am unpersuaded by *Ward*'s implication that bankruptcy courts ought to ignore, in cases involving the issue of dischargeability of injunctions enforcing covenants not to compete, concerns regarding the debtor's use of bankruptcy law to escape the consequences of his or her wrongdoing. *See id.* at 714 (discussing the *Udell* court for its inability to "bring itself to equate an injunction against breach of contract with a monetary judgment for breach of contract which is routinely discharged in bankruptcy," and assigning significance to the fact that, where wrongdoing is prohibited by law, the discharge of an injunction prohibiting that wrongdoing "does not terminate the obligation to refrain from such conduct").[4] I am more convinced by the middle-ground approach taken by the court in *In re Brown.*

Noting that the interpretation and enforceability of covenants not to compete are dictated by state law, *Brown* began by inquiring, under applicable state law, as to the nature of the remedies, if any, for breaching such covenants. 1997 WL 786994 at \*4. There, California law controlled, and under that law on the facts at issue, Brown found that covenants not to compete are void as against public policy. However, by statute, California courts are permitted to issue injunctions to enforce certain personal service contracts when monetary damages are not adequate, specifically, where the promised service is of an unusual character, which gives it peculiar value. *Id.* As a result, California law

---

**3.** The Supreme Court has considered the question of whether an injunction can constitute a claim dischargeable in bankruptcy, in the context of hazardous waste pollution. *Ohio v. Kovacs,* 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985). The Court determined that the portion of the injunction requiring the polluter to clean up the site constituted a dischargeable claim, *id.* at 282–283, 105 S.Ct. 705, but was careful to delineate what it was not deciding, including whether the portion of the injunction against polluting the property in the future was dischargeable, and if not, on what basis. *Id.* at 284–285, 105 S.Ct. 705. As a result, *Kovacs* left open the applicability of the decision to cases involving injunctions against future conduct. *See* S. Wald, "Bankruptcy and Personal Services Contracts: What Works, What Doesn't and Why," 16 *Entertainment and Sports Law* 3, (1998) (commenting that, at least outside of the Seventh Circuit [*In re Udell,* 18 F.3d 403 (7th Cir.1994) ], "the question of whether the discharge encompasses the equitable right to seek an injunction against some of the debtor's competitive future business activities is still an open one").

**4.** As has been often noted, the purpose of the discharge provision in bankruptcy is to release an honest debtor from his financial burdens and facilitate a "fresh start." *See Kokoszka v. Belford,* 417 U.S. 642, 644–645, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974); *In re Bowman,* 173 B.R. 922, 924 (9th Cir. BAP 1994). It is worth noting that *Ward* describes this policy as giving simply "the debtor" a fresh start, and, moreover, emphasizes that its conclusion, that injunctions against future competition necessarily constitute claims dischargeable in bankruptcy, promotes this fresh start policy. 194 B.R. at 712.

required the Brown court to account for whether the debtor was a "celebrity" at the time he entered into the noncompete agreement. *Id.* at *5. In effect, then, the *Brown* decision finds room for the bankruptcy court to account for the circumstances surrounding the debtor's violation or threatened violation of a noncompete covenant, where applicable state law so provides.[5]

The applicable law here is that of Missouri. In addition, the instant case involves not only an injunction issued on the basis of both a violation of the covenant not to compete (a breach of contract), but also a violation of the Trade Secrets Act (a tort). Moreover, unlike in *Brown*, this case involves a situation where the state court has awarded equitable relief, based on a specific finding that an injunction governing Brown's future behavior would be the only way to address the harm suffered by Dent Wizard. Brown did not appeal the Missouri judgment, and is collaterally estopped from challenging that finding in this court. (See discussion in Part B. 1., below.)

As a result, this court is bound by the Missouri court's determination that an injunction is the only viable remedy under the circumstances of this case. Inasmuch as Dent Wizard's remedy at law has specifically been found to be inadequate, and any future harm irreparable, the injunction cannot be said to give rise to a right to payment. Thus, the injunction does not constitute a claim under Section 101(5)(B).

## B. Dischargeability of Money Damages Debt

Dent Wizard seeks a determination that the money damages which it was awarded in the Missouri Judgment are excepted from dischargeability by virtue of Bankruptcy Code Section 523(a)(4) and/or (a)(6).

In so seeking, Dent Wizard would have this court give collateral estoppel effect to the Missouri judgment, on the basis that the requisite elements of Section 523 were proven in state court by a preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

### 1. Collateral Estoppel Effect of Missouri Judgment

■ In determining whether to give the Missouri judgment collateral estoppel effect, this court applies the law of Missouri. *Bugna v. McArthur,* 33 F.3d 1054, 1057 (9th Cir.1994). Under Missouri law, the court is to consider four factors: 1) whether the issue to be decided here is identical to that decided by the Missouri court, 2) whether the Missouri action resulted in a judgment on the merits, 3) whether Brown was a party in the Missouri action, and 4) whether Brown "had a full and fair opportunity to litigate the issue" in the Missouri action. *Major v. Frontenac Industries, Inc.,* 968 S.W.2d 758, 761 (Mo.App.1998).

Brown contends that this court should not give the Missouri judgment collateral estoppel effect inasmuch as it is not a judgment on the merits, and he did not have an opportunity to litigate fully and fairly the issue of whether he misappropriated Dent Wizard's trade secrets.

■ There is no basis to Brown's contention that the Missouri judgment was a default judgment rather than a judgment on the merits. Under Missouri law, where a party files an answer, as Brown did, a subsequent judgment after trial is not a default judgment, but rather constitutes a judgment on the merits. *Tinsley v. Gosnell,* 873 S.W.2d 943, 944 (Mo.App.1994). Brown's failure to appear at trial is legally immaterial.

---

**5.** As one commentator has pointed out, the debtor threatening to violate a noncompete covenant might be "an ungrateful wretch" preventing the employer from getting "a fair return on his investment," or an individual who has been "abused" by an employer unwilling to "pay him a fair share of the proceeds from his talents." 16 *Entertainment and Sports Lawyer* at 3.

■ To determine whether Brown had a full and fair opportunity to litigate the issue of misappropriation of trade secrets, the court looks at four factors: 1) whether Brown had a strong incentive to litigate the Missouri action, 2) whether this forum provides procedural opportunities which were not available in Missouri state court, 3) whether the Missouri Judgment is inconsistent with any others, and 4) whether the Missouri forum was "substantially inconvenient" to Brown. *Sunshine Realty Corp. v. Killian*, 702 S.W.2d 95, 102 (Mo. App.1985). Brown claims that he did not have a full and fair opportunity to litigate the Missouri action because the Missouri forum, chosen by Dent Wizard, was inconvenient.

There appears to be no Missouri case law setting forth what constitutes a "substantially inconvenient" forum in the context of the application of the doctrine of collateral estoppel. However, Missouri forum non conveniens law, which includes a consideration of whether the chosen forum is seriously inconvenient, provides some guidance.[6] *See Taylor v. Farmers Ins. Co.*, 954 S.W.2d 496, 500 (Mo.App.1997). According to Missouri law, absent "fraudulent procurement" of the forum, the plaintiff's choice should be honored "if reasonable men could differ with the decision to dismiss" on the basis of forum non conveniens. *Barrett v. Missouri Pacific R.R. Co.*, 688 S.W.2d 397, 399–400 (Mo.App. 1985). Fraudulent procurement occurs when the forum "is so unrelated to the cause of action, plaintiff's residence, and defendant's office or residence as to constitute ... harassment." *Id.* at 399.

In his declaration submitted in support of his opposition to this motion, Brown stated, "I suspect that [Dent Wizard] filed the initial action in Missouri as they [sic] knew that I would be financially unable to fight the matter in Missouri," declared that he "could not afford to litigate the

matter in Missouri," and stated that Dent Wizard "chose the forum most convenient and advantage [sic] to them [sic]." In his opposition brief, Brown further contends that Dent Wizard "chose a forum that would inconvenience the Defendant and which was most favorable to the result that it sought," and that he "could not afford attorneys [in Missouri] and he could not afford to go to Missouri to properly defend the matter."

In support of its choice of Missouri as a forum, Dent Wizard noted that the contracts executed by Brown and Dent Wizard contained a forum selection clause designating Missouri as the appropriate forum. (Ex. 1 of Request for Judicial Notice, "Verified Petition for Injunctive and Other Relief and Damages"). Moreover, Dent Wizard's Vice President of Operations declared that Brown executed the contracts at issue in Missouri and received training on the PDR process there.

Brown has failed to demonstrate a triable issue of fact that Dent Wizard procured the Missouri forum fraudulently, in an effort to harass Brown. There is no requirement that Dent Wizard litigate in California by virtue of that being Brown's residence. In fact, Dent Wizard, as a Florida corporation, might well have chosen to litigate there, to its financial benefit and Brown's detriment. Moreover, Brown's contentions fail to demonstrate that he was "substantially inconvenienced" by virtue of the Missouri forum. Beyond mere assertion, Brown has not raised a triable issue of fact that he lacked the financial ability to litigate in Missouri, or that Dent Wizard knew that he was financially unable to litigate in Missouri. Neither has Brown raised an issue of fact that he could not afford to hire a Missouri attorney (as opposed to, say, a California attorney). In fact, Brown was able to procure Missouri counsel to prepare and file an answer to Dent Wizard's complaint.

**6.** That part of the forum non conveniens inquiry which is concerned with inconvenience to witnesses or to the court itself is not relevant to the applicability of the doctrine of collateral estoppel.

In addition, it is worth noting that Brown's answer raised the forum non conveniens issue, which could have been followed by a motion to dismiss the complaint on that basis. This would not have been a costly motion, inasmuch as neither Brown nor any witnesses would have been required to appear. Finally, Brown has provided nothing, beyond mere speculation, tending to show that Dent Wizard chose Missouri as a forum to gain inappropriate advantage over him.[7]

Rather, this appears to be a case where reasonable people could differ regarding Dent Wizard's choice of forum. Thus, inasmuch as Brown has failed to show that there exists a triable issue of fact regarding whether he was substantially inconvenienced by Dent Wizard's choice of Missouri as a forum, he has failed to raise an issue regarding his opportunity to litigate fully and fairly the issue of misappropriation of trade secrets. As a result, Brown cannot show that the Missouri judgment should not be given collateral estoppel effect by this court in determining whether the money damages against Brown are exempt from discharge under Section 523(a).

7. It was certainly to Dent Wizard's advantage that Missouri has adopted the Uniform Trade Secrets Act, rendering Brown's actions post-termination not simply a breach of contract but a tort as well. As a result, the issue of the willfulness of Brown's conduct in competing against Dent Wizard takes on a relevancy generally absent from the breach of contract setting, such that a finding of willful violation of the Trade Secrets Act suggests that the damages are nondischargeable in bankruptcy under Section 523. However, Brown has failed to demonstrate that Dent Wizard's choice of the Missouri forum, even if that choice was influenced by the existence of the Trade Secrets Act, amounted to fraudulent procurement of the forum. In this vein, it is worth noting that both Florida and California have also adopted the Uniform Trade Secrets Act. *See* Florida Statutes, Sections 688.001–688.009; Cal.Civ.Code Sections 3426–3426.11.

8. As a result, *Geiger* has "effectively overruled" the standard previously employed in the Ninth Circuit, set forth in *Impulsora Del*

## 2. Applicability of Section 523(a)(6)

■ Dent Wizard contends that the Missouri court's finding that Brown misappropriated Dent Wizard's trade secrets in an outrageous manner, with evil motive and/or reckless indifference to the rights of others, constitutes willful and malicious injury under Section 523(a)(6).

The Supreme Court recently ruled, in *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), that "nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Id.* at 977.[8] However, *Geiger* left somewhat unclear what sort of intent would qualify as " 'actual intent to cause injury.' " *See Miller v. J.D. Abrams Inc.*, 156 F.3d 598, 603 (5th Cir.1998). In a sustained analysis of this issue, the Fifth Circuit has determined that two standards meet the Supreme Court's definition of willful injury: 1) "any tort substantially certain to cause injury," which it labeled the "objective substantial certainty" standard, or 2) "any tort motivated by a desire to inflict injury," which it labeled the "subjective motive" standard. *Id.*[9]

*Territorio Sur, S.A. v. Cecchini (In re Cecchini)*, 780 F.2d 1440 (9th Cir.1986). *Gill Distribution Centers, Inc. v. Banks (In re Banks)*, 225 B.R. 738, 747 (Bankr.C.D.Cal.1998). *See also In re Molina*, 228 B.R. 248, 251 (9th Cir. BAP 1998) (describing *Geiger* as having "modified" a portion of the Ninth Circuit's formulation of the elements of dischargeability under Section 523(a)(6)).

9. The *Miller* court rejected a reading of *Geiger* which would have equated Section 523(a)(6) torts with torts generally classified as intentional torts, explaining that "[m]erely because a tort is classified as intentional does not mean that any injury caused by the tortfeasor is willful." *Id.* ("[w]e hold that the label 'intentional tort' is too elusive to sort intentional acts that lead to injury from acts intended to cause injury"). As the *Miller* court noted, *cases involving misuse of trade secrets aptly illustrate the problems inherent in such an equation.* The court explained that, although "misuse of trade secrets are generally considered to be intentional torts," "[m]isuse of trade secrets is not precisely like stealing

As a result, the issue here is, on the one hand, whether the jury in the Missouri action determined either that Brown acted with a desire to cause Dent Wizard injury (the subjective motive standard), or alternatively, that the injury to Dent Wizard was caused with substantial certainty by Brown's acts (the objective substantial certainty standard), or, on the other hand, whether the jury determined only that the injury was proximately caused by Brown's acts. *See id.*

The Missouri judgment states that Brown acted "with evil motive and/or reckless indifference." While there is room to argue that the jury failed to find the requisite intent under *Geiger*, inasmuch as "debts arising from recklessly . . . inflicted injuries do not fall within the compass of Section 523(a)(6)," *Geiger*, 118 S.Ct. at 978, this fails to account for the jury's finding that Brown additionally acted with "evil motive." Such a finding presumably means that Brown's motive was more than simply wrongful, simply for his own gain. Rather, Brown's intent to cause evil constituted an intent to injure Dent Wizard. This interpretation of the jury's findings is bolstered by the jury's decision to award punitive damages to Dent Wizard.[10] As a result, the court finds the money damages debt nondischargeable under Section 523(a)(6).

### 3. Applicability of Section 523(a)(4)

■ Alternatively, Dent Wizard contends that, inasmuch as the Trade Secrets Act defines misappropriation of trade secrets as, inter alia, the use of "improper means" to acquire trade secrets, and defines "improper means" as "theft," that the Missouri court's finding of violation of the Trade Secrets Act necessarily makes the money damages debt nondischargeable un-

der Section 523(a)(4), by virtue of constituting larceny. However, at the point that Brown acquired the trade secrets, he did so lawfully, but he subsequently misused the trade secrets. Thus, it is embezzlement, rather than larceny, which is the applicable Section 523(a)(4) term. *See Miller*, 156 F.3d at 602.

■ For the purposes of Section 523(a)(4), embezzlement is defined as the "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *Id.* (citations and internal quotation omitted). Thus, embezzlement requires "proof of the debtor's fraudulent intent in taking the property." *Id.* (citations omitted). This is not a situation where the debtor "wrongfully appropriate[d] a trade secret while acting under an erroneous belief of entitlement." *See id.* Rather, the jury's finding that Brown acted with "evil motive" indicates that Brown harbored fraudulent intent. As a result, the court finds that the Missouri judgment provides the basis for concluding that the money damages debt is non-dischargeable by virtue of Section 523(a)(4) as well.

■

---

funds from a till, because the tortfeasor's gain is not inevitably a loss to the legal owner of the secret." *Id.* at 604.

**10.** It is worth noting that, unlike here, in *Miller*, where the court found that the jury did not make the findings required under *Geiger* to trigger Section 523(a)(6), that jury specifi-

cally found that the tortfeasor did not act with "malice mean[ing] ill will, evil motive, or flagrant disregard for the rights of others," in misappropriating trade secrets, and as a result refused to award punitive damages. *Id.* at 601.